UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 20-20788-Civ-Scola

SERGIO CRUZ, an individual

      Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES LTD.,
a Liberian Corporation, MILDRED ARCHBOLD, MD,
an individual

      Defendant.

_____/

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff, SERGIO CRUZ, by and through undersigned counsel, hereby files this Amended Complaint for Damages and sues Defendants, ROYAL CARIBBEAN CRUISES, LTD., (hereinafter "RCCL"), and MILDRED ARCHBOLD, M.D., and alleges as follows:

## GENERAL ALLEGATIONS

1.    This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest, costs, and attorneys' fees.

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333. Further, this matter is being filed in the United States District Court for the Southern District of Florida located in Miami-Dade County, Florida, as required by the forum selection clause contained within the Cruise Ticket Contract issued by Defendant. Upon information and belief, Defendant is in possession of a copy of the subject Ticket Contract.

3.     **THE PLAINTIFF.**  The Plaintiff, SERGIO CRUZ, is sui juris and is a resident of Florida.  At all times material hereto, the Plaintiff was a passenger onboard the cruise ship operated by the Defendant ROYAL CARIBBEAN CRUISES, LTD ("RCCL").  At all times material hereto, the Plaintiff received medical care from the physicians and medical staff onboard the cruise ship operated by the Defendant RCCL and the Defendant MILDRED ARCHBOLD, M.D. was a physician onboard who was providing medical care and treatment to the Plaintiff.

4.     **THE DEFENDANTS**.

a.  **ROYAL CARIBBEAN CRUISES, LTD.**:   The Defendant, ROYAL CARIBBEAN CRUISES, LTD., (hereinafter referred to as "RCCL" or "the cruise line"), is incorporated outside of the State of Florida upon information and belief in the country of Liberia but has a principal place of business in the State of Florida and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred, and had an employment or agency relationship with Defendant, MILDRED ARCHBOLD.

b.  **MILDRED ARCHBOLD, M.D.**: The Defendant, MILDRED ARCHBOLD, is a physician licensed outside the state of Florida but who was an employee, agent, and/or joint venture of Defendant RCCL which does business in the State of Florida and which at all times material hereto was doing business in Miami Dade County, Florida. The Defendant, MILDRED ARCHBOLD, is a resident of the State of Florida. At all times material hereto, the Defendant MILDRED ARCHBOLD worked as one of the shipboard physicians on the cruise ship owned and/or operated by the Defendant RCCL on which the subject negligence occurred and provided negligent medical care to the Plaintiff which caused permanent injury to the plaintiff.

5.      **FEDERAL SUBJECT MATTER JURISDICTION**. This action arises under the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

6.      **VENUE AND PERSONAL JURISDICTION**. The Defendants, at all times material hereto, through agents or representatives, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

7.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

<u>**OTHER ALLEGATIONS COMMON TO ALL COUNTS**</u>

8.      **DATE OF THE INCIDENTS**. The incidents occurred on and after March 30, 2019.

9.      **LOCATION OF THE INCIDENT.** These incidents occurred onboard the RCCL vessel *Oasis of the Seas*, a ship in navigable waters while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by the general maritime law.

10.     **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

## OTHER ALLEGATIONS COMMON TO COUNTS I-IV

11. **THE FLOWRIDER** – The FlowRider is an activity that provides passengers with the opportunity to surf an "artificial" wave while sailing on RCCL's ships. The FlowRider was originally designed for use on land by another company – not RCCL. RCCL then took the FlowRider concept and altered it for use on cruise ships in its fleet. During the process of altering the design of the FlowRider, RCCL knew or should have known that the alterations made to the design rendered the FlowRiders on its ships significantly more dangerous than the original, land-based FlowRider. RCCL participated in the design, installation, and maintenance of the FlowRiders aboard the *Oasis of the Seas*. RCCL's FlowRider is an extremely dangerous activity. RCCL is aware that many passengers have suffered serious orthopedic and neurologic injuries resulting in reported injuries, claims, and lawsuits. Despite this knowledge, RCCL has failed to take reasonable action to make this activity safe for its passengers.

12. **NOTICE:** RCCL knew or should have known that the FlowRider was unreasonably dangerous as a result of its knowledge of prior similar incidents that occurred on the FlowRider aboard the *M/S Oasis of the Seas* and other vessels in its fleet of cruise ships.[1] *See Cosmo v. Carnival Corporation,* 272 F.Supp.3d 1336 (S.D. Fla. 2017)(J. Scola). Moreover, upon information and believe RCCL has received several passenger complaints/comments about the unreasonably dangerous nature of the FlowRiders in its fleet. In addition, RCCL knew or should have known that the FlowRiders on *Oasis of the Seas* were unreasonably dangerous as a result of its participation in the alteration of the original FlowRider design, construction of the RCCL FlowRider, and approval of the altered design. *See Groves v. Royal Caribbean Cruises, Ltd.,* 463 F. Appx. 837 (11th Cir. 2012). RCCL knew or should have known that the alterations it made to the original FlowRider design rendered RCCL's FlowRiders substantially

---

[1] One example of a prior incident resulting in an awkward fall similar to the fall suffered by Plaintiff can be found online at: https://www.youtube.com/watch?v=OyfMw9SN7sQ

and significantly more dangerous for use by passengers.  Moreover, RCCL knew or should have known of the unreasonably dangerous condition of its FlowRiders because the design and operation methods used by RCCL deviated from accepted industry safety practices.  *See, Holderbaum v. Carnival,* 87 F. Supp. 3d. 1345 (S.D. Fla. 2015)(J.  Lenard).

## OTHER ALLEGATIONS COMMON TO COUNTS V-IX

13.     **DESCRIPTION OF INCIDENT - RCCL'S REPRESENTATIONS**.  RCCL has deliberately chosen to enter the business of medicine by providing medical services to its passengers aboard its ships.  RCCL reaps the tangible benefits from providing such services as part of its business strategy.  RCCL represents in its marketing materials to prospective passengers for them to rely on these representations that each ship contains an onboard Medical Center, which is staffed by doctors and nurses. The fact that RCCL has a Medical Center onboard its ships and represents to the public that the medical staff is on call 24 hours a day for emergencies attracts prospective passengers to purchase tickets for RCCL cruises even though those cruises travel to developing countries and to isolated waters of the world.   RCCL also represents that it has a ship's physicians that meet or exceed the credentialing guidelines established by the cruise ship medicine section of the American College of Emergency Physicians who are experienced with general medicine or general practice including emergency or critical care.

14.     RCCL also makes representations in its literature, online, and in its onboard video about the ease of travel for its primarily U.S. citizen passengers. Thus, even though the RCCL ships travel throughout the Caribbean, the Gulf of Mexico and in and near ports which are in developing countries, RCCL represents that its medical centers are staffed by qualified physicians and nurses who are committed to providing the highest quality of shipboard medical care to maintain a safe and comfortable environment for its guests.

15.     These representations made by RCCL form a part of the basis for the duty of RCCL to provide medical care onboard its ships of a certain quality and capability.

16.     The fact that RCCL voluntarily undertook to provide medical care to its passengers, including the Plaintiff herein, also forms a part of the basis for the duty of RCCL to provide medical care onboard its ships of a certain quality and capability.  *See, e.g., Horton v. Freeman*, 943 So.2d 1016 (Fla. 4th DCA 2006); *Estate of Sharp v. Omnicare, Inc.* 879 So.2d 34 (Fla. 5th DCA 2004); and *Roos v. Morrison*, 913 So.2d 59 (Fla. 1st DCA 2005); *Kerfoot v. Waychof*, 501 So.2d 588 (Fla. 1987).

17.     **DUTIES OWED.**     RCCL voluntarily undertook to provide medical care to the Plaintiff onboard the ship.  In so doing, RCCL undertook to provide care which was reasonable and within the standard of care.  These duties arise in this case from the law and from the fact and circumstances of this cruise which include but are not limited to the following: (a) the Defendant cruise line owes a duty under the General Maritime Law to provide its passengers with a voyage and a ship which are reasonably safe under the circumstances; (b) the Defendant cruise line represents in its advertising and literature that the cruise line provides a Medical Center staffed with medical professionals; (c) the Defendant cruise line holds out the ship's medical staff and physicians as its employees, actual agent, apparent agent and/or joint ventures; (d) the Defendant cruise line voluntary undertook in this case to provide medical care and treatment to the Plaintiff; (e) the cruise ship is isolated on the open seas for periods of time and thus the only medical care reasonably available to the passenger is onboard the ship; (g) the cruise line and this ship caters to U.S. citizens who are used to and expect first world medical care; (h) the cruise line markets this cruise as safe and secure for its passengers; (i) the cruise line profits off of providing onboard medical care to its passengers; (j) the subject doctor represented MILDRED ARCHBOLD as working for and as an agent of the Defendant; and (k) the subject cruise ship takes its passengers to the waters off of third world countries with third world medical care which is either non-existent or below the standard of care for medical care in the United States and elsewhere.

6

18.     Relying on the representations of the cruise line about the medical and other facilities and amenities on the cruise ship, SERGIO CRUZ took a cruise with his family on March 30, 2019, on the *Oasis of the Seas.*

19.     During that cruise, SERGIO CRUZ experienced a serious injury while riding the FlowRider.  Following that incident SERGIO CRUZ was transported to the ship's medical facility in a stretcher and placed in a cervical collar.  During SERGIO CRUZ's visit to ship's medical facility, the ship doctor, MILDRED ARCHBOLD noted that SERGIO CRUZ was in pain and had pain radiating into his left shoulder.  He was provided with multiple pain medications and noted to have an unsteady gait at the medical center.

20.     MILDRED ARCHBOLD failed to recognize that SERGIO CRUZ was suffering from an acute neurological condition which required urgent surgical intervention to avoid permanent neurological damage.

## COUNT I
## NEGLIGENT FAILURE TO WARN AGAINST RCCL

Plaintiff hereby adopts and incorporates paragraphs 1 through 12 as if fully set-forth herein, and alleges as follows:

21.     **DUTIES OWED:** At all times material hereto, RCCL had the duty to use reasonable care under the circumstances, and to maintain and operate its vessel, the *M/S Oasis of the Seas*, in a reasonably safe condition and manner.  *See, Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1321 (11th Cir. 1989).  Cruise lines owe their passengers a duty to warn of known or foreseeable dangers which are not open and obvious. *See, Brown v. Carnival Corporation,* 202 F.Supp. 3d 1332 (S.D. Fla. 2016)(J. Ungaro)(citing *Witover v. Celebrity Cruises, Inc.,* 161 F. Supp. 3d. 1139, 1146 (S.D. Fla. 2016).

22.     RCCL is vicariously liable for the negligent acts and omissions of its employees, agents, and/or independent contractors committed during the course and scope of their employment with RCCL including their failure to reasonably warn the Plaintiff about the unreasonably dangerous nature

of the FlowRiders.

23.     **PLAINTIFF'S INCIDENT:**     On or about March 30, 2019, Plaintiff was participating in the FlowRider surfing/bodyboard activity.   Immediately prior to participating in the activity, Plaintiff was negligently provided with insufficient warning about the unreasonable dangers of participating the in FlowRider activity.   The unreasonably dangerous aspects of RCCL's FlowRiders were not open and obvious to the Plaintiff.   During Plaintiff's first, and only, attempt to ride the FlowRider, the Plaintiff fell and landed on his head and cervical spine resulting in immediate neurological symptoms.

24.     RCCL breached the above duties owed to SERGIO CRUZ in the following ways:

a.   Failing to reasonably provide adequate warnings to passengers about the dangerous and unsafe condition of the FlowRiders on the *Oasis of the Seas*;

b.   Failing to reasonably warn passengers over the age of forty about their high propensity for severe injury while using the FlowRider;

c.   Failing to reasonably warn passengers about the very hard landing surface of the simulated surfing surface of the FlowRider;

d.   Failing to reasonably warn passengers that the FlowRider is much more difficult to use than it appears and that a vast majority of passengers fall while using the Flowrider;

e.   Failing to reasonably warn passengers about the increased propensity for injury associated with standing and surfing the FlowRider as opposed to bodyboarding on the FlowRider;

f.   Failing to reasonably warn passengers about the severe injuries sustained by others while appropriately using the Flowrider which would allow passengers, including Plaintiff, to reasonably assess the risk of injury

associated with the activity.

25.     As a direct and proximate result of the aforementioned negligence of RCCL, Plaintiff, SERGIO CRUZ, was injured, suffered physical impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, pain and suffering, the aggravation of pre-existing conditions, inconvenience, loss of earnings and/or wages, loss of earning potential, and incurred the costs of reasonable and necessary medical expenses for the treatment of his injuries. These losses and injuries are permanent and continuing in nature, and Plaintiff will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II:**
**NEGLIGENT CONSTRUCTION, DESIGN, AND APPROVAL OF THE FLOWRIDER**
**AGAINST RCCL**

Plaintiff hereby adopts and incorporates paragraphs 1 through 11 as if fully set-forth herein, and alleges as follows:

26.     **DUTIES OWED:** At all times material hereto, RCCL had the duty to use reasonable care under the circumstances, and to maintain and operate its vessel, the *M/S Oasis of the Seas*, in a reasonably safe condition and manner.  *See, Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1321 (11th Cir. 1989).  The cruise line had the duty to use reasonable care in designing, constructing, and approving the areas of the vessel which the cruise line participated in either designing, construction, or approving.

*Groves v. Royal Caribbean Cruises, Ltd.,* 463 F. Appx. 837 (11th Cir. 2012).

27.     RCCL is vicariously liable for the negligent acts and omissions of its employees, agents, and/or independent contractors committed during the course and scope of their employment with RCCL including their failure to reasonably design and construct the FlowRider.  In addition, RCCL is vicariously liable for the negligent acts and omissions of its employees, agents, and/or independent contractors committed during the course and scope of their employment with RCCL including their unreasonable approval of the unreasonably dangerous design and construction of the FlowRider.

28.     **PLAINTIFF'S INCIDENT:**   On or about March 30, 2019, Plaintiff was participating in the FlowRider surfing/bodyboard activity.  The unreasonably dangerous aspects of RCCL's FlowRiders were not open and obvious to the Plaintiff.  During Plaintiff's first, and only, attempt to ride the FlowRider, the Plaintiff fell and landed on his head and cervical spine resulting in immediate neurological symptoms.

29.     RCCL breached the above duties owed to SERGIO CRUZ in the following ways:

a.   Failing to comply with industry standards for reasonable design and construction of waterpark/wave-riding actitivies;[2]

b.   Unreasonably failing to provide a safe surface for passengers to fall onto while using the FlowRider;

30.     As a direct and proximate result of the aforementioned negligence of RCCL, Plaintiff, SERGIO CRUZ, was injured, suffered physical impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, pain and suffering, the aggravation of pre-existing conditions, inconvenience, loss of earnings and/or wages, loss of earning potential, and incurred the costs of reasonable and necessary medical expenses for the treatment of his injuries. These losses and injuries

---

[2] Plaintiff believes that following an expert inspection and production of documents additional breaches of these duties may be discovered.

are permanent and continuing in nature, and Plaintiff will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## NEGLIGENT OPERATION OF THE FLOWRIDER ACTIVITY

Plaintiff hereby adopts and incorporates paragraphs 1 through 12 as if fully set-forth herein, and alleges as follows:

31.     **DUTIES OWED:** At all times material hereto, RCCL had the duty to use reasonable care under the circumstances, and to maintain and operate its vessel, the *M/S Oasis of the Seas*, in a reasonably safe condition and manner.  *See, Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1321 (11th Cir. 1989).  Reasonable care by an instructor on a FlowRider activity includes ensuring that a participant understands the relevant risk of participating in the activity and how to participate in the activity.  *See, Magazine v. Royal Caribbean Cruises, Ltd.,* 2014 WL 1274130 (S.D. Fla. 2014).

32.     RCCL is vicariously liable for the negligent acts and omissions of its employees, agents, and/or independent contractors committed during the course and scope of their employment with RCCL including their failure to reasonably release the Plaintiff onto the simulated wave in a manner that would not result in an immediate awkward fall causing severe injury.

33.     **PLAINTIFF'S INCIDENT:**   On or about March 30, 2019, Plaintiff was

participating in the FlowRider surfing/bodyboard activity.  Immediately prior to participating in the activity he was provided with minimal guidance, instruction, or training about how to safely participate in the activity.  The Plaintiff was encouraged by the RCCL FlowRider instructor to promptly stand on the board and attempt to ride the wave without a reasonable understanding of how to do so and the serious dangers posed by the conditions of the FlowRider.  While Plaintiff was being released onto the simulated wave by an RCCL employee, the RCCL employee negligently pulled or pushed the Plaintiff's arm causing him to immediately suffer an awkward fall. During Plaintiff's first, and only, attempt to ride the FlowRider, the Plaintiff fell and landed on his head and cervical spine resulting in immediate neurological symptoms.

34.     RCCL breached the above duties owed to SERGIO CRUZ in the following ways:

a.  Failing to reasonably release the Plaintiff onto the simulated wave in a manner that would prevent the Plaintiff from suffering an immediate awkward fall;

b.  Failing to allow the Plaintiff to reasonably stabilize himself on the surfboard and wave prior to releasing him onto the simulated wave;

c.  Failing to comply with RCCL's policies and procedures for the operation of the FlowRider activity on its vessels;

d.  Failing to reasonably train and instruct passengers about how to safely participate in the Flowrider activity to minimize the risk of injury;

e.  Failing to ensure that the Plaintiff reasonably understood how to safely participate in the activity and that the Plaintiff understood the dangers of participating in the activity prior to participating.

35.     As a direct and proximate result of the aforementioned negligence of RCCL, Plaintiff, SERGIO CRUZ, was injured, suffered physical impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, pain and suffering, the aggravation of pre-existing conditions,

inconvenience, loss of earnings and/or wages, loss of earning potential, and incurred the costs of reasonable and necessary medical expenses for the treatment of his injuries. These losses and injuries are permanent and continuing in nature, and Plaintiff will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENT TRAINING OF CREWMEMBERS REGARDING THE OPERATION OF THE FLOWRIDER ACTIVITY

Plaintiff hereby adopts and incorporates paragraphs 1 through 12 as if fully set-forth herein, and alleges as follows:

36.    **DUTIES OWED:** At all times material hereto, RCCL had the duty to use reasonable care under the circumstances, and to maintain and operate its vessel, the *M/S Oasis of the Seas*, in a reasonably safe condition and manner.  *See, Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1321 (11th Cir. 1989).  RCCL owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004).

37.    RCCL is vicariously liable for the negligent acts and omissions of its employees, agents, and/or independent contractors committed during the course and scope of their employment with RCCL.

38.     **PLAINTIFF'S INCIDENT:**     On or about March 30, 2019, Plaintiff was participating in the FlowRider surfing/bodyboard activity.   Immediately prior to participating in the activity he was provided with minimal guidance, instruction, or training about how to safely participate in the activity.  While Plaintiff was being released onto the simulated wave by an RCCL employee, the RCCL employee negligently pulled or pushed the Plaintiff's arm causing him to immediately suffer an awkward fall. During Plaintiff's first, and only, attempt to ride the FlowRider, the Plaintiff fell and landed on his head and cervical spine resulting in immediate neurological symptoms.

39.     RCCL breached the above duties owed to SERGIO CRUZ in the following ways:

   a.   Failing to reasonably train the crew about how to release passengers onto the simulated wave in a manner that would prevent them from suffering immediate awkward falls;

   b.   Failing to reasonably train the crew to allow passengers to reasonably stabilize themselves on the surfboard and wave prior to releasing them onto the simulated wave;

   c.   Failing to reasonably train the crew to comply with RCCL's policies and procedures for the operation of the FlowRider activity on its vessels; and

   d.   Failing to reasonably train the crew about how to instruct and train passengers about how to safely participate in the Flowrider activity to minimize the risk of injury;

   e.   Failing to reasonably train the crew to make sure that passengers fully understood how to safely participate in the FlowRider activity before allowing them to participate in the activity.

40.     As a direct and proximate result of the aforementioned negligence of RCCL, Plaintiff, SERGIO CRUZ, was injured, suffered physical impairment, disability, disfigurement, mental anguish,

loss of capacity for the enjoyment of life, pain and suffering, the aggravation of pre-existing conditions, inconvenience, loss of earnings and/or wages, loss of earning potential, and incurred the costs of reasonable and necessary medical expenses for the treatment of his injuries. These losses and injuries are permanent and continuing in nature, and Plaintiff will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V:
## NEGLIGENT MEDICAL TREATMENT – VICARIOUS LIABILITY OF CRUISE LINE: ACTUAL AGENCY/RESPONDEAT SUPERIOR

The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 10 and 13-20, above.

41.      This is an action for negligent medical treatment of the Plaintiff by the shipboard physicians and medical staff.  The Defendant RCCL is vicariously liable and responsible for the negligent acts of its shipboard medical personnel including those persons who were employees and/or actual agents of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014). The cruise line is vicariously liable for the negligence for the shipboard physicians and medical staff.  This ultimately is based on the fact that the physicians and medical staff are employees or actual agents of the cruise line.  Therefore, under *respondeat superior* and actual agency the cruise line is liable for the negligence of the physicians and medical staff.

42.     Defendant, MILDRED ARCHBOLD, was an employee and actual agent of RCCL on the date of the subject incident.  This is an action based on the agency relationship between RCCL and the shipboard physicians and medical staff in which the physicians and medical staff acted and act as the actual agents of RCCL in providing medical services, medical supplies and medications to RCCL's passengers on a regular basis. RCCL employed the shipboard physicians, including MILDRED ARCHBOLD, and the medical staff aboard the subject ship to provide medical and emergency medical treatment to its crew and thousands of passengers aboard its ships.  The Defendant, as owner of the ship and its medical center, is liable to its passengers for medical negligence of its medical employees.  RCCL represented to RCCL's passengers that the shipboard physicians and medical staff would provide RCCL passengers a safe and comfortable environment for cruise passengers and that the medical center would meet or exceed the standards established by the Cruise Lines International Association (CLIA) and the American College of Emergency Physicians (ACEP).  The shipboard physicians and medical staff consented and accepted this relationship and in exchange provided payment, and benefits including senior officer status, round-trip transportation from residence to ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, and daily housekeeping services. RCCL maintained and exercised control over the shipboard physicians and medical staff's actions and conduct aboard the ship and the shipboard medical center.  This is evidenced by the fact that RCCL maintained an ongoing relationship with the shipboard medical physicians and medical staff whereby RCCL exclusively provided its passengers for medical services, controlled the stocking of the medical center, offered RCCL's Cruise Vacation Protection Plan for reimbursement of medical related expenses, controlled the medical center's hours of operation, allowed and required the ship's physicians to operate and provide services out of the ship's Medical Center, required the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies, and controlled termination of the employment relationship between the shipboard physicians and medical staff with RCCL.

43.     The onboard doctor and medical staff owed a duty to provide medical care and treatment to its passengers which was proper and reasonable under the circumstances and within the standard of care. These duties arise in this case from the law and from the facts and circumstances of this cruise which includes but is not limited to the following: (a) over 1000 cruise passengers rely on the shipboard doctor and medical personnel for medical care; (b) the cruise ship is in fact isolated on the open seas for periods of time and thus the only medical care reasonably available to the passenger is onboard the ship; (c) the shipboard doctor and medical personnel know and are advised through training and materials that RCCL provides medical care on its ships and RCCL voluntarily undertakes to provide medical care and to passengers; (d) the cruise line and this ship cater to U.S. citizens who are used to and expect first world medical care; and (e) the subject cruise ship plies the waters off of third world countries with third world medical care which is either non-existent or below the standard of care for medical care in the United States and elsewhere.

44.     MILDRED ARCHBOLD and medical personnel breached their duties of reasonable care under the circumstances.  MILDRED ARCHBOLD and the medical personnel failed to administer the medical care and treatment which was necessary and reasonable and which complied with the standard of care for the treatment of the Plaintiff herein.  MILDRED ARCHBOLD and the onboard medical staff, failed to properly assess Plaintiff's medical condition and correctly diagnose Plaintiff's medical condition.  The shipboard physicians, including MILDRED ARCHBOLD, and the medical staff failed to conduct a thorough examination of Plaintiff by failing to order appropriate diagnostic testing and scans to further assess the extent of Plaintiff's severe symptoms.  MILDRED ARCHBOLD failed to recognize and properly treat the Plaintiff's progressive medical condition.  Because MILDRED ARCHBOLD and the medical staff failed to recognize the nature of the Plaintiff's progressive emergency medical condition, she failed to initiate, request, and/or advocate for prompt medical evacuation of the Plaintiff from the cruise ship to a land based medical center capable of handling the Plaintiff's medical condition on March

30, 2019 or immediately thereafter.  As a direct result of the shipboard physician and medical staff's failings, the Plaintiff's condition worsened which resulted in permanent neurological damage.

45.     Defendant MILDRED ARCHBOLD and the shipboard medical personnel knew or should have known the limitations in terms of quality and competency of themselves and their facilities, in terms of the equipment, supplies and medications and in terms of the ability of that system onboard to cope or deal with significant medical emergencies, and breached their duty of  reasonable under the circumstances in its medical treatment and its failing to evacuate and to properly and timely diagnose, to recognize their own limitations and to timely evacuate or recommend evacuation of the patient.

46.     The shipboard physicians and medical staff failed to warn the Plaintiff that the medical center and staff were not equipped to properly handle the Plaintiff's condition.  The shipboard doctor and the medical staff knew or should have known to warn the Plaintiff as to the medical center's, physician, and medical staff's limitations to provide medical services due to competency, training and experience, medical supplies, medical equipment, and medications to passengers.

47.     The negligent acts of the Defendant's actual agents that occurred aboard the Defendant's ship caused severe and permanent damage to the Plaintiff.  As a direct and proximate result of the negligence of the ship's medical staff including the onboard doctor as described above, the Plaintiff suffered neurological damage.

48.     The cruise line is liable for the shipboard physicians and medical personnel because of the actual agency where MILDRED ARCHBOLD and the medical personal are agents of RCCL.  As a direct result of the shipboard physician and medical staff's negligent treatment, for which the cruise line bears responsibility, the Plaintiff's suffered permanent paralysis.

49.     The negligence of MILDRED ARCHBOLD and medical personnel proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related

expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

50.     RCCL is liable for these damages alleged herein because of the *respondeat superior* and actual agency relationship of the parties as described herein.

WHEREFORE, the Plaintiff demands Judgment against RCCL for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, aggravation of a previously existing condition, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI:**
**NEGLIGENT MEDICAL TREATMENT – VICARIOUS LIABILITY OF CRUISE LINE:**
**APPARENT AGENCY/AGENCY BY ESTOPPEL**

The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 10 and 13-20, above.

51.     This is an action for negligent medical treatment of the Plaintiff by the shipboard physicians and medical staff. The Defendant RCCL is vicariously liable and responsible for the negligent

acts of its shipboard medical personnel including those persons who were apparent agents of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014). The cruise line is vicariously liable for the negligence for the shipboard physicians and medical staff because of the relationship of the physicians and medical staff as apparent agents of the Defendant cruise line.

52. Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line. The Defendant through its actions and conduct represents to its cruise passengers including, but not limited to the Plaintiff herein, that the shipboard physicians and medical staff work for the benefit of the Defendant. These actions and conduct of the cruise line include but are not limited to the following:

a. The Defendant controls cruise line physicians' attire, which includes, at times, a uniform with epaulettes and stripes similar to other crewmembers;

b. The Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

c. The Defendant cruise line requires that the ship's physicians sail with the ship;

d. The Defendant cruise line provides the onboard Medical Center;

e. The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line and which is equipped by the cruise line;

f. The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

g.   The ship's physicians represented themselves to passengers that they are employees of RCCL Cruise Line;

h.   The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

i.   The Defendant publishes the Medical Center's daily office hours in its information materials and flyer distributed to all passengers aboard its ships; and

j.   The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies.

53.   The Defendant cruise line is in the business of providing medical services to its passengers. The cruise line also benefits from providing such services. The fact that the cruise line has a Medical Center onboard its ships and represents to the public that "the medical staff is on call 24 hours a day for emergencies" attracts prospective passengers to purchase tickets on the cruise line which cruises go to foreign countries, often third world countries, with little or no medical care for such passengers.

54.   At all times material to this action, the shipboard physicians, including MILDRED ARCHBOLD, and all the shipboard medical staff, were acting within the course and scope of their agency.

55.   At all times material to this action, the Defendant cruise line represented to the passengers onboard the subject cruise ship including the Plaintiff herein that the ship's doctor was the cruise line's apparent agent, in one or all of the following ways:

a.   Defendant controls cruise line physician's attire, which included, at times, a uniform with epaulettes and stripes similar to other crewmembers;

b.   The Defendant cruise line offers physicians benefits including, but not limited to senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private

furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

c.   Defendant controlled the pricing of services provided in the Defendant's Medical Center by shipboard physicians such as MILDRED ARCHBOLD;

d.   Defendant required that passengers seeking medical attention do so in the shipboard Medical Center with the shipboard doctors including MILDRED ARCHBOLD;

e.   Defendant charged Plaintiff directly for the shipboard physician services, including MILDRED ARCHBOLD, by using Plaintiff's shipboard charge card, which also served as his cabin room key, immediately following the receipt of services in the Defendant's Medical Center;

f.   MILDRED ARCHBOLD represented herself as an employee of RCCL;

g.   The Defendant required that shipboard physicians, including MILDRED ARCHBOLD, sail with the ship;

h.   The Defendant cruise line requires that the ship's physicians to sail with the ship;

i.   The Defendant cruise line provides the onboard Medical Center;

j.   The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line and which is equipped by the cruise line;

k.   The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

l.   The ship's physicians represent themselves to passengers that they are an employee of RCCL;

m. The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

n. The Defendant publishes the Medical Center's daily office hours in its informational flyer distributed to all passengers aboard its ships;

o. The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies;

p. The Defendant controlled where the shipboard physicians provided medical services by requiring that they operate out of the Defendant's onboard Medical Center;

q. The Defendant provided the onboard Medical Center and provided within that Medical Center the medical equipment, diagnostic machines, disposable goods, medications, and other materials necessary for the onboard physicians including Dr. MILDRED ARCHBOLD to provide services; and

r. The Defendant exercises control over whether to terminate the employment relationship of the shipboard physicians and medical staff with the Defendant.

56. The cruise line acknowledged that the shipboard physicians, including MILDRED ARCHBOLD would act for it by designating them as a shipboard physician and by requiring them to operate out of the RCCL's Medical Center. The shipboard physicians, including MILDRED ARCHBOLD, manifested an acceptance of this undertaking by accepting this position of shipboard physician and by providing medical care to Defendant's passengers, including the Plaintiff herein. The Defendant, as principal, exercised control over the shipboard physician and medical staff's actions.

57. The Plaintiff relied on the cruise line's apparent agents and relied on the cruise line's agents in good faith. The Plaintiff reasonably believed that the shipboard doctor and medical staff were acting as agents of the cruise line. The Plaintiff agreed to the purchasing the cruise line tickets based on

his reasonable belief that the ship's doctor and medical staff would be acting as an agent of the cruise line. The Plaintiff researched the cruise line's shipboard amenities in the his decision to select a cruise vacation and read that RCCL provided world class medical facilities which included doctors and medical staff approved and provided by RCCL. The Plaintiff, relying on these representations, purchased RCCL cruise line tickets based on a reasonable believe that any doctor and medical personnel were acting as an agent of the cruise line.

58.     The Plaintiff also justifiably relied upon the care or skill of the cruise line's shipboard doctor and medical staff. The Plaintiff justifiably relied on the apparent agency of the shipboard doctor and medical personnel because he submitted to treatment by the ship's medical staff and doctor; followed the advice of MILDRED ARCHBOLD and let her prescribe and administer medicine and physical examination; and relied on MILDRED ARCHBOLD and the medical personnel's representations that they could and would not be ordering a medical evacuation, that the Plaintiff did not require urgent medical care, that the Plaintiff had a "sprain," that would slowly improve with time, that the Plaintiff did not need diagnostic testing including CT or MRI scans, or any further medical care – just rest.

59.     Ultimately, the Plaintiff relied on the apparent agency to his great detriment. The shipboard doctor and medical personnel were not world-class and were unfit to treat the Plaintiff's condition. The Plaintiff relied on the representation that SERGIO CRUZ's condition was not serious and did not require emergency medical attention, but in fact the shipboard doctor and medical personnel could and should have arranged for such transport promptly, or even at the next port of call. Earlier and better medical treatment would have prevented the Plaintiff's neurological injuries. Thus, the Plaintiff relied on the representations and assurances by the Defendant cruise line's apparent agents to his detriment. If not for these representations and assurances, the Plaintiff would never have purchased RCCL cruise tickets for he and his family; go on the subject cruise ship and cruise; and he and his family

would have made efforts to speak with the ship's captain, shoreside employees and/or contacted the United States Coast Guard themselves for medical evacuation, treatment and/or assistance.

60.     The shipboard doctor owed a duty to provide medical care and treatment to its passengers which was proper and reasonable under the circumstances and within the standard of care. These duties arise in this case from the law and from the fact and circumstances of this cruise which includes but is not limited to the following: (a) over 1000 cruise passengers rely on the shipboard doctor and medical personnel for medical care; (b) the cruise ship is in fact isolated on the open seas for periods of time and thus the only medical care reasonably available to the passenger is onboard the ship; (c) the shipboard doctor and medical personnel know and are advised through training and materials that RCCL provides medical care on its ships and RCCL voluntarily undertakes to provide medical care and to passengers; (d) the cruise line and this ship cater to U.S. citizens who are used to and expect first world medical care; and (e) the subject cruise ship plies the waters off of third world countries with third world medical care which is either non-existent or below the standard of care for medical care in the United States and elsewhere.

61.     Dr. MILDRED ARCHBOLD and medical personnel breached their duties of reasonable care under the circumstances.   Dr. MILDRED ARCHBOLD and the medical personnel failed to administer the medical care and treatment which was necessary and reasonable and which complied with the standard of care for the treatment of the Plaintiff herein.   Dr. MILDRED ARCHBOLD and the onboard medical staff, failed to properly assess Plaintiff's medical condition and correctly diagnose Plaintiff's medical condition.   The shipboard physicians, including Dr. MILDRED ARCHBOLD, and the medical staff failed to conduct a thorough examination of Plaintiff by failing to order appropriate diagnostic testing and scans to further assess the extent of Plaintiff's injuries.   Dr. MILDRED ARCHBOLD failed to recognize and properly treat the Plaintiff's medical condition.   Because Dr. MILDRED ARCHBOLD and the medical staff failed to recognize the nature of the Plaintiff's medical condition, she failed to initiate, request, and/or advocate for prompt medical evacuation of the Plaintiff

from the cruise ship to a land based medical center capable of handling the Plaintiff's medical condition on March 30, 2019 or immediately thereafter. As a direct result of the shipboard physician and medical staff's failings, the Plaintiff's condition worsened and the Plaintiff suffered neurological injury, which could have been prevented.

62.     Defendant, MILDRED ARCHBOLD, and the shipboard medical personnel knew or should have known the limitations in terms of quality and competency of themselves and their facilities, in terms of the equipment, supplies and medications and in terms of the ability of that system onboard to cope or deal with significant medical emergencies, and breached their duty of reasonable under the circumstances in its medical treatment and its failing to evacuate and to properly and timely diagnose, to recognize their own limitations and to timely evacuate or recommend evacuation of the patient.

63.     The shipboard physicians and medical staff failed to warn the Plaintiff that the medical center and staff were not equipped to properly handle the Plaintiff's condition. The shipboard doctor and the medical staff knew or should have known to warn the Plaintiff as to the medical center's, physician, and medical staff's limitations to provide medical services due to competency, training and experience, medical supplies, medical equipment, and medications to passengers.

64.     The negligent acts of the Defendant's actual agents that occurred aboard the Defendant's ship caused severe and permanent damage to the Plaintiff resulting in neurological damage.

65.     The cruise line is liable for the shipboard physicians and medical personnel because of the actual agency where MILDRED ARCHBOLD and the medical personal are agents of RCCL. As a direct result of the shipboard physician and medical staff's negligent treatment, for which the cruise line bears responsibility, the Plaintiff's condition worsened and he now suffers from neurological damage.

66.     The negligence of MILDRED ARCHBOLD and medical personnel proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related

expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

67.     RCCL is liable for these damages alleged herein because of the apparent agency relationship of the parties as described herein.

WHEREFORE, the Plaintiff demands Judgment against RCCL for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident

**COUNT VII:**
**NEGLIGENT MEDICAL TREATMENT – VICARIOUS LIABILITY OF CRUISE LINE:**
**JOINT VENTURE**

The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 10 and 13-20, above.

68.     This is an action for negligent medical treatment of the Plaintiff by the shipboard physician. The Defendant RCCL is vicariously liable and responsible for the negligent acts of its shipboard physicians who were joint ventures with the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014). The cruise line is vicariously liable for the negligence for the

shipboard physician because of the relationship of the physician as a joint venture with the Defendant cruise line.

69.     The cruise line and the physicians aboard the Defendant's ships engaged in a joint venture to provide medical services to the cruise passengers. The parties intended to engage in a joint venture; maintained joint control or the right to control; joint proprietary interests in the shipboard medical care and medical facility that was the subject of the joint venture; and all parties held the right to share in the profits and duty to share in the ventures losses.

70.     **THE PARTIES' INTENT**.  It was the joint intention and common purpose of the Defendant cruise line and the shipboard physicians to provide healthcare to the thousands of passengers who come aboard the Defendant's ships to enjoy the cruise experience with the peace of mind that their medical and emergency healthcare needs are satisfied.  The cruise line and the physician on board the Defendant's ships entered into a long-term business agreement to provide passengers and crewmembers medical care and treatment aboard the cruise line's ships.  The purpose of the venture was to profit from providing medical services to cruise passengers and crewmembers.  A written agreement between joint ventures is not necessary to establish a joint venture.  *Fulcher's Point Pride Seafood, Inc v. M/V Theodora Maria*, 935 F.2d 208, 213 (11th Cir. 1991).   The "true intent of the parties, their conduct (and intent thereby evidenced) created a joint venture." *Terry v. RCCL Corporation*, 2017 WL 5135599 at *4 (S.D. Fla. Aug. 10, 2017).

71.     The Parties maintained verbal agreement and their conduct indicate their intent to a long-term agreement to provide medical services and care to passengers and crewmembers in exchange for payment.  RCCL incorporated medical facilities onboard its cruise ships, including the RCCL *Symphony of the Seas*, as part of its business model.  The cruise line profits from the revenue generated from its shipboard infirmaries.  With medical personnel working onboard its ships, the cruise line's ships do not have to divert or reroute to provide medical care as required by international law.  This saves the cruise

line significant fuel costs and costly port fees.  The Defendant cruise line is also able to market that they provide medical care to persuade people to cruise with them.  This generates increased ticket sales. Defendant MILDRED ARCHBOLD purposefully reached out to Defendant RCCL to its Florida shoreside medical department to enter into a long-term business arrangement to provide medical services to cruise passengers and crewmembers for profit.

72.    **JOINT CONTROL OR RIGHT OF CONTROL**.  The cruise line and shipboard physicians, including MILDRED ARCHBOLD, maintain joint control or right of control over the medical care and services provided to passengers and crewmembers aboard the Defendant cruise line's ships.  The Defendant cruise line has the right of control over the medical facility from a shoreside perspective. RCCL's shoreside medical department monitored and supervised MILDRED ARCHBOLD through its shoreside orientation trainings, standard operating procedures, and other standards, policies, procedures and guidelines she was required to follow.  The cruise line also required MILDRED ARCHBOLD  to continuously communicate with RCCL's shoreside medical department for shoreside to control the restocking of medical supplies and medicine; sending medical equipment technicians to cruise ships to fix and maintain medical equipment; providing final approval and authorization on proposed medical evacuations; providing shoreside 24/7 on-call doctors for medical consultations.  The cruise line has the right to control marketing its shipboard physicians and make use of the physicians' name, voice, pictures, photographs and other likenesses for the purpose of promoting and publicizing the Defendant cruise line's vessels in any and all media.  The Defendant cruise line has the right of control over proprietary interests including the medical operational procedures, medical trainings and other intellectual property.

73.    Shipboard physicians control and oversee the day-to-day operations of the shipboard medical facilities and medical personnel aboard the cruise line's ships.  Here, MILDRED ARCHBOLD was the Senior Medical Officer onboard the RCCL *Oasis of the Seas* who exercised day-to-day control over

and oversaw the operation and maintenance of the medical facility's treatment of passengers and crewmembers onboard the ship. MILDRED ARCHBOLD 's controlled the day-to-day operations which included ensuring continuous updating computerized inventory of the infirmary's medical supplies and medicine; providing consultations, treatment and care, maintaining clinic hours; providing and maintaining 24/7 on-call emergency response of a physicians and nurses; logging the billing for treatment, care and supplies provided to crewmembers and passengers; ensuring the physicians and medical personal write medical notes and medical records for all consultations, treatment and care provided; initiating, requesting, and/or advocating for prompt medical evacuation for passengers and crewmembers requiring care or treatment that exceeds what the medical facility can provide, calling shipboard security to report passenger and crewmember accidents; ensuring all paperwork to document accidents requiring more than first aid treatment is written and maintained; and prescribing and filling prescription medications to passengers and crewmembers aboard cruise ships; ensuring continuous communication with RCCL's shoreside medical department.

74.   **JOINT PROPRIETARY INTEREST**.  The Defendants share a joint interest in the business enterprise between the parties. *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 212 (11th Cir. 1991).  Therefore, the parties shared a joint propriety interest in the subject matter of the contract, that being RCCL owned the RCCL *Oasis of the Seas* medical facilities and Dr. MILDRED ARCHBOLD supervised and invested all of his time and efforts operating the medical center and all of its day-today services.  On board the *Oasis of the Seas* MILDRED ARCHBOLD invested her time and efforts by ensuring continuous updating computerized inventory of the infirmaries medical supplies and medicine; providing consultations, treatment and care, maintaining clinic hours; providing and maintaining 24/7 on-call emergency response of physicians and nurses; logging the billing for treatment, care and supplies provided to crewmembers and passengers; ensuring the physicians and medical personnel write medical notes and medical records for all consultations, treatment and care provided;

initiating, requesting, and/or advocating for prompt medical evacuation for passengers and crewmembers requiring care or treatment that exceeds what the medical facility can provide, calling shipboard security to report passenger and crewmember accidents; ensuring all paperwork to document accidents requiring more than first aid treatment is written and maintained; prescribing and filling prescription medications to passengers and crewmembers aboard cruise ships; and ensuring continuous communication with RCCL's shoreside medical department.

75.     **PROFITS AND LOSSES.**  The cruise line and the shipboard physician share in profits and losses based on the circumstances of their agreement.  In this arrangement MILDRED ARCHBOLD supplied her labor, experience, and skill while RCCL provided the necessary capital to outfit the medical facility.  RCCL incorporated medical facilities onboard its cruise ships, including the RCCL *Oasis of the Seas*, as part of its business model.  The Defendant cruise line profits from the revenue generated from its shipboard infirmaries.  With medical personnel working onboard its ships, the cruise line's ships do not have to divert or reroute to provide medical care as required by international law.  This saves the cruise line significant fuel costs and costly port fees.  The Defendant cruise line is also able to market that they provide medical care to persuade people to cruise with them.  This generates increased ticket sales. In the event of a loss, MILDRED ARCHBOLD would have exercised his skills in vain and RCCL's capital investment would financially suffer, and thus both parties would effectually share in the losses if the venture failed.

76.     Additionally, the cruise line and the physicians and medical staff therefore relied on a single billing system and unified strategy of advertisement on RCCL's website.  The cruise line and shipboard physicians and medical staff share profits and losses and split revenue from medical services and supplies rendered to the thousands of cruise passengers.  The shipboard physicians and medical staff increase profits by servicing passengers and prescribing them medications and supplies.  Shipboard physicians have the sole discretion to sell prescription medication and medical supplies to passengers and

crewmembers.  Shipboard physicians have the sole discretion to render medical care, treatment and services to passengers and crewmembers aboard the Defendant's cruise ships during its day-to-day operations.  Shipboard physicians who oversee the medical personnel's actions have the sole discretion to input medical services and supplies provided to passengers and crewmembers.  RCCL's compensation for the shipboard physicians and medical staff's services is dependent in part on the medical center's revenues and the medical center's revenues depend in part on the recommendations and prescriptions of the physicians to the passengers as to the medical care that they need or should have and whether these passengers should evacuate the ship to receive medical care off the cruise ship.

77.    The shipboard doctor owed a duty to provide medical care and treatment to its passengers which was proper and reasonable under the circumstances and within the standard of care. These duties arise in this case from the law and from the fact and circumstances of this cruise which includes but is not limited to the following: (a) over 1000 cruise passengers rely on the shipboard doctor and medical personnel for medical care; (b) the cruise ship is in fact isolated on the open seas for periods of time and thus the only medical care reasonably available to the passenger is onboard the ship; (c) the shipboard doctor and medical personnel know and are advised through training and materials that RCCL provides medical care on its ships and RCCL voluntarily undertakes to provide medical care and to passengers; (d) the cruise line and this ship cater to U.S. citizens who are used to and expect first world medical care; and (e) the subject cruise ship plies the waters off of third world countries with third world medical care which is either non-existent or below the standard of care for medical care in the United States and elsewhere.

78.    Dr. MILDRED ARCHBOLD and medical personnel breached their duties of reasonable care under the circumstances.  Dr. MILDRED ARCHBOLD and the medical personnel failed to administer the medical care and treatment which was necessary and reasonable and which complied with the standard of care for the treatment of the Plaintiff herein.  Dr. MILDRED ARCHBOLD and the onboard medical staff, failed to properly assess Plaintiff's medical condition and correctly diagnose

Plaintiff's medical condition.  The shipboard physicians, including Dr. MILDRED ARCHBOLD, and the medical staff failed to conduct a thorough examination of Plaintiff by failing to order appropriate diagnostic testing and scans to further assess the extent of Plaintiff's injuries.   Dr. MILDRED ARCHBOLD failed to recognize and properly treat the Plaintiff's medical condition.  Because Dr. MILDRED ARCHBOLD and the medical staff failed to recognize the nature of the Plaintiff's medical condition, she failed to initiate, request, and/or advocate for prompt medical evacuation of the Plaintiff from the cruise ship to a land based medical center capable of handling the Plaintiff's medical condition on March 30, 2019 or immediately thereafter.  As a direct result of the shipboard physician and medical staff's failings, the Plaintiff's condition worsened and the Plaintiff suffered neurological injury, which could have been prevented.

79.     Defendant MILDRED ARCHBOLD and the shipboard medical personnel knew or should have known the limitations in terms of quality and competency of themselves and their facilities, in terms of the equipment, supplies and medications and in terms of the ability of that system onboard to cope or deal with significant medical emergencies, and breached their duty of  reasonable under the circumstances in its medical treatment and its failing to evacuate and to properly and timely diagnose, to recognize their own limitations and to timely evacuate or recommend evacuation of the patient.

80.     The shipboard physicians and medical staff failed to warn the Plaintiff that the medical center and staff were not equipped to properly handle the Plaintiff's condition.  The shipboard doctor and the medical staff knew or should have known to warn the Plaintiff as to the medical center's, physician, and medical staff's limitations to provide medical services due to competency, training and experience, medical supplies, medical equipment, and medications to passengers.

81.     The negligent acts of the Defendant's actual agents that occurred aboard the Defendant's ship caused severe and permanent damage to the Plaintiff.  As a direct and proximate result of the

negligence of the ship's medical staff including the onboard doctor as described above, the Plaintiff suffered neurological damage.

82.    The cruise line is liable for the shipboard physicians and medical personnel because of the actual agency where MILDRED ARCHBOLD and the medical personal are agents of RCCL.  As a direct result of the shipboard physician and medical staff's negligent treatment, for which the cruise line bears responsibility, the Plaintiff's condition worsened.

83.    The negligence of MILDRED ARCHBOLD and medical personnel proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

84.    RCCL is liable for these damages alleged herein because of the joint venture relationship of the parties as described herein.

WHEREFORE, the Plaintiff demands Judgment against RCCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs,

all interest due under the applicable law including interest from the date of the subject incident.

## COUNT VIII: NEGLIGENT MEDICAL CARE
## DIRECT LIABILITY OF MILDRED ARCHBOLD, M.D.

The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 10 and 13-20, above.

85.     This is an action for negligent medical treatment of the Plaintiff by MILDRED ARCHBOLD M.D., a shipboard physician.

86.     At all times material hereto, Defendant MILDRED ARCHBOLD held herself out to the public in general and to the Decedent herein as a healthcare provider who was capable of and who undertook the corresponding duty to the Plaintiff of providing medical services to the Plaintiff in accordance with that level of care and skill that is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers under the same or similar circumstances.

87.     Notwithstanding the duties undertaken, Defendant MILDRED ARCHBOLD breached the duties he owed to the Plaintiff.  MILDRED ARCHBOLD failed to properly recognize and diagnose the plaintiff's condition.   MILDRED ARCHBOLD failed to order an emergency MRI, medical evacuation, and neurosurgical and/or orthopedic consultation and evaluation.  MILDRED ARCHBOLD failed to correctly diagnose or recognize the severity and progressive nature of the Plaintiff's medical condition upon his first presentation in the ship's medical center.  MILDRED ARCHBOLD failed to order appropriate diagnostic testing and scans to further assess the extent of Plaintiff's severe pain and symptoms.  MILDRED ARCHBOLD failed to recognize the need and importance of an operating x-ray machine, CT machine, and MRI scanner during this medical work up to properly assess the Plaintiff's severe and progressive medical condition.  MILDRED ARCHBOLD failed to treat and/or appropriately treat the Plaintiff even as his progressive condition worsened.   MILDRED ARCHBOLD failed to accurately describe, characterize and/or advise RCCL's shoreside on-call physical as to the nature of the

Plaintiff's severe and progressive medical condition.   Because MILDRED ARCHBOLD  failed to recognize the nature of the Plaintiff's severe progressive medical condition, she failed to initiate, request, and/or advocate for prompt medical evacuation of the Plaintiff from the cruise ship to a land based medical center capable of handling the Plaintiff's medical condition on March 30, 2019 and shortly thereafter.  MILDRED ARCHBOLD failed to use or ask for resources such as manuals and treatises, access or use reasonable procedures to contact medical professionals in the United States for consultation about the care and treatment for the Plaintiff's condition.

88.    These failures constituted unreasonable and below standard medical care.

89.    The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, aggravation of a previously existing condition, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General

Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT IX:**
**NEGLIGENT PROVISIONING AND EQUIPPING OF MEDICAL FACILITY**
**DIRECT LIABILITY OF THE CRUISE LINE**

The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 10 and 13-20, above.

90.     This is an action for negligence of the Defendant cruise line in failing to provide reasonable medical facilities onboard its ship, the RCCL *Oasis of the Seas*.

91.     The Defendant cruise line has a duty to properly man the ship's medical facilities, to provide the appropriate resources to the medical staff, and to provide reasonable and appropriate equipment, supplies, and medications for the ship's medical facility.

92.     These duties arise in this case from the law and from the fact and circumstances of this cruise which includes but is not limited to the following: (a) the Defendant cruise line's duty under the General Maritime Law to provide its passengers with a voyage and a ship which are reasonably safe or reasonably safe under the circumstances; (b) the Defendant cruise line's representations in its advertising and literature that the cruise line provides a medical facility; (c) the Defendant cruise line's holding out the ship's physicians as its apparent agent; (d) the Defendant cruise line's voluntary undertaking in this case to provide medical care and treatment to the Plaintiff; (e) the cruise ship is in fact isolated on the open seas for periods of time and thus the only medical care reasonably available to the passenger is onboard the ship; (f) the cruise line and this ship caters to U.S. citizens who are used to and expect first world medical care; (g) the cruise line markets this cruise as safe and secure for its passengers; and (h) the subject cruise ship plies the waters off of third world countries with third world medical care which is either non-existent or below the standard of care for medical care in the United States and elsewhere.

93.     The Defendant deliberately made the decision to enter the business of medicine.  The Defendant chose to construct, outfit and staff medical centers aboard its ships with physicians and

medical staff whom the cruise line hired, trained, outfitted, paid, and controlled.  The Defendant also paid to stock and maintain its medical centers with supplies, various medicines and medical equipment. The Defendant therefore knows about its purchases and has institutional knowledge of medicine

94.     The cruise line breached its duty of reasonable care under the circumstances in this case by its actions and conduct.  The Defendant failed to supply its shipboard medical center with resources such as manuals and treatises, and access and reasonable procedures for contacting medical professionals in the United States for consultation about the care and treatment of significant medical conditions of its passengers including the Plaintiff.  The Defendant failed to supply and/or maintain its shipboard medical center with operational medical equipment including an operational CT and MRI Scanner.  The Defendant knew or should have known to appropriately stock and/or maintain its shipboard Medical Center with adequate diagnostic and medical testing equipment and medications for its Physicians and medical staff to properly diagnose, treat and care for its passengers.  The Defendant failed to properly provide its shipboard medical facility with properly maintained equipment, supplies, and resources which they should have there to provide for the medical care of thousands of people onboard its ships which ply the waters off of third world countries with third world medical care.

95.     The Plaintiff herein while under the care and treatment of the ship's physicians, including MILDRED ARCHBOLD, was treated improperly and unreasonably under the circumstances, below the standard of care, and negligently as more fully described in the paragraphs above. The negligent acts of the Defendant occurred aboard the Defendant's ship caused Plaintiff's neurological damage. As a direct and proximate result of the negligence of the ship's medical staff including the onboard doctor as described above, the Plaintiff suffered neurological damage.

96.     The Defendant's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future;

household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 5th, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and thereafter served ROYAL CARIBBEAN CRUISES, LTD., at its principal place of business in Miami, Florida.

**FLANAGAN PERSONAL INJURY & WRONGFUL DEATH LAW FIRM, P.A.**
*Counsel for Plaintiff*
2 Alhambra Plaza
Suite 620
Coral Gables, Florida 33134
Tel: (305) 638 – 4143
Fax: (305) 397 - 2636


By*:      Michael T. Flanagan*

Michael T. Flanagan, Esq.
Fla. Bar No. 0091072
Primary E-mail: mtf@Florida-Justice.com
Secondary E-mail: mtfassistant@Florida-Justice.com